# GREGERSON v. EQUITABLE LIFE & CASUALTY INS. CO.

No. 7674.   Decided April 29, 1953.   (256 P. 2d 566.)

See 45 C. J. S., Insurance, sec. 702. Estoppel of insurer relating to reinstatement of policy. 29 Am. Jur., Insurance, sec. 272; 164 A. L. R. 1067.

*Skeen, Thurman & Worsley* and *Verl C. Ritchie,* Salt Lake City, for appellant.

*Claude T. Barnes,* Salt Lake City, for respondent.

McDONOUGH, Justice.

Defendant appeals from a judgment entered in favor of plaintiff and against the defendant for $3,000, the face amount of an insurance policy sued upon.

Dr. Grant Gregerson was insured for several years under a policy issued by the Mountain States Insurance Company. In May 1947, Dr. Gregerson made written application to the Mountain States Insurance Company for a policy (No. 1707-OL) to replace the prior one. In this application he answered questions to the effect that he was in good health and had suffered no prior serious illness, although the record reveals that in 1946 he had spent approximately 15 days in a hospital due to cardiac failure and hypertension. The new policy (1707-OL) contained the usual provisions as to premium payments; grace periods, and additional provisions as to the application being part of the contract itself, and all statements in such application being warranties and not representations.

In September 1948, the defendant's name was changed from the Mountain States Insurance Company to the Equitable Life and Casualty Insurance Company and the policy with Dr. Gregerson was assumed by the latter company. The premium due on January 1, 1950 was not paid by Dr. Gregerson or by the plaintiff, who was the beneficiary under the policy, and no premium was received by defendant within the grace period of thirty days. Two days after the expiration of the grace period plaintiff tendered to defendant the premium due on January 1, 1950 and requested reinstatement of the policy. Defendant refused to accept the tendered payment or to reinstate the lapsed policy unless an application for reinstatement and a statement of health was submitted to its office. At this time Dr. Gregerson suffered an illness which later proved to be fatal and was unable to sign the application for reinstatement or statement of health. To indicate Gregerson's eligibility for premium waivers and tax discounts, insured's

doctor submitted a letter stating that Dr. Gregerson had been completely incapacitated from hypertension for a whole year. On the basis of this letter defendant refused to reinstate the policy until insured could furnish satisfactory evidence of insurability. Insured died approximately three months later and plaintiff tendered the monthly premiums due for the intervening months to the defendant who refused to accept them. Action was then brought upon the policy with this appeal resulting.

The basic and decisive issue in this case is whether defendant waived the right to insist upon compliance with the requirement of a showing by insured of physical insurability before granting a timely request for reinstatement. We believe such a waiver was made.

The provision for reinstatement provides:

"This policy may be reinstated any time within thirty days and less than six months after lapse on payment to the Company of arrears of premium * * * *provided that such reinstatement shall require evidence of insurability satisfactory to the Company and subject to reinstatement provisions* (Commuted Benefits)." (Italics ours.)

The Commuted Benefits provision stated:

"(a)  If the application for this Policy is accepted and a Policy issued without a satisfactory Medical Examiner's report, as a condition precedent to the taking effect of this Policy, the Insured must be in good and vigorous health and free from all bodily ailments and disease at the date of issue and delivery of this Policy *or at the date of reinstatement after any lapse thereof.* Otherwise, any benefits accruing under this Policy are hereby forfeited and the Company is relieved of all liability hereunder.

"(b)  If the Insured shall die from any cause except accidental causes within six months following the effective date of this Policy *or following the date of reinstatement after any* lapse thereof, one-half of the benefits otherwise payable hereunder will be paid." (Italics ours.)

When the new policy (No. 1707-OL) was issued to replace the prior one an instrument designated a "Waiver"

was "Attached to and made part of policy No. 1707-OL issued upon the life of Grant Gregerson the insured" This instrument provided:

"Whereas, Grant Gregerson the above insured has for a period of more than six months immediately last past been insured under a policy in the Mountain States Insurance Company; and

"Whereas, all of the premiums due on said policy for a period of six months or more immediately prior to the date hereof have been paid before the same became delinquent;

"Now Therefore, in consideration of the premises, *it is hereby agreed that the penalties contained in the commuted benefits provisions of this policy are hereby waived* as to the said Grant Gregerson *to the extent of the principle amount of the policy heretofore in force* upon the life of the said insured to wit: the sum of $3000.00.

"It is further agreed that *all amounts in excess of the amount* on the life of each of said insured *in the original policy hereinabove mentioned shall be subject to the provisions of this contract.*" (Italics ours.)

The policy allows for reinstatement any time within thirty days and less than six months after a lapse of premium payments.

"provided that such reinstatement shall require evidence of insurability satisfactory to the Company *and* subject to reinstatement provisions (Commuted Benefits)." (Italics ours.)

The use of the conjunctive "and" indicates that reinstatement depends upon the fulfillment of two requirements: (1) evidence of insurability which is satisfactory to the Company, and (2) compliance with the requirements of the Commuted Benefits provisions. This proviso is ambiguous and redundant in that evidence of insurability generally refers to physical fitness for risk and the requirement as to such fitness is found in Section (a) of the Commuted Benefits section which requires the Insured to

"be in good and vigorous health and free from all bodily ailments and disease * * * at the date of reinstatement after any lapse thereof."

Further confusion is added by Section (a) of the Commuted Benefits provision since it completely abrogates any benefits accrued under the policy if the requisites as to physical insurability are not met. Since abrogation is not commutation it would appear section (a) is unaffected by the waiver and insured would lose the benefit thereof unless it was the Company's intent that the penalty of section (a) be considered as commutation in respect to reinstatement of the policy.

That such intent existed is first indicated by the inclusion by the company of section (a) under a provision entitled "Commuted Benefits." In cases of ambiguity, a strict interpretation against the drawer of the contract is applied. Under such construction this provision alone may be sufficient to find such intent. Additional support for such interpretation is found in the fact that the policy itself considers Section (a) as Commuted Benefit in respect to reinstatement. In addition to the proviso

"that such reinstatement shall require evidence of insurability satisfactory to the Company and subject to reinstatement provisions (Commuted Benefits)"

the reinstatement clause states

"the acceptance by the Company of a past due premium within thirty days after lapse without notice to the insured will be considered a reinstatement as provided under Commuted Benefits."

Section (a) itself states that it applies upon "the date of reinstatement after any lapse thereof"; and the attached "waiver" waives all penalties contained in the Commuted Benefits provisions of the policy. (Italics ours.) Hence, it appears that the company intended section (a) to be considered as a Commuted Benefit and thereby waived by the attached instrument.

In *Gressler* v. *New York Life Insurance Co.*, 108 Utah 182, 163 P.2d 324, 164 A.L.R. 1047, we held that an insured

person has a contractual right to fully reinstate a policy upon compliance with the conditions for reinstatement contained in the policy. The reinstatement provisions of the instant policy, as applicable to the insured, subjected him to the Commuted Benefits provisions which required that at the date of reinstatement (and in the absence of a Medical examiners' report) he "must be in good and vigorous health and free from all bodily ailments and disease."

The waiver attached to and made a part of the policy in 1947 waived

"the penalties contained in the commuted benefits provisions of the policy * * * to the extent of the principal amount of the policy heretofore in force upon the life of the said insured, to wit: the sum of $3000.00."

We believe that where the penalty involved is a release of the insurer's liability and a forfeiture of the benefits accruing under the policy a waiver of such penalties is in effect a release of the requirements. Hence, upon conversion or a timely request for reinstatement, the physical condition of the insured was to be accepted as it existed under the old policy and without further requisites.

By its terms such waiver applied only to the extent of the principal amount of the old policy. Since this action was instituted for the original principal of $3,000 only, no question as to additional amount exists. The judgment of the lower court is affirmed.

WOLFE, C. J., CROCKETT and WADE, JJ., and BAKER, District Judge, concur.

HENRIOD, J., having disqualified himself did not participate.